IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| HEATHER H. MILLER (f/k/a HEATHER H. MURREN), TRUSTEE OF THE HM 2021 IRREVOCABLE TRUST, DATED AUGUST 11, 2021<br>201 Beachside Drive<br>Vero Beach, Florida 32963<br><br>*Plaintiff*,<br><br>v.<br><br>STEVEN M. MANIAGO<br>3542 Coventry Gardens Dr.<br>Las Vegas, Nevada 89135<br><br>and<br><br>VANESSA H. MANIAGO<br>3542 Coventry Gardens Dr.<br>Las Vegas, Nevada 89135<br><br>and<br><br>OAK HILL AT SNUG HARBOR, LLC<br>27303 Baileys Neck Rd.<br>Easton, Talbot County, Maryland 21601<br><br>Serve:  Zachary Smith, RA<br>            114 Bay Street, Bldg. C<br>            Easton, Maryland 21601<br><br>*Defendants*. | Case No. 24-cv-02664 |

**COMPLAINT FOR BREACH OF PROMISSORY NOTE**

Plaintiff Heather H. Miller (f/k/a Heather H. Murren), Trustee of the HM 2021 Irrevocable Trust, dated August 11, 2021 ("Plaintiff"), through undersigned counsel, hereby files this

Complaint against Defendants Steven M. Maniago and Vanessa H. Maniago (collectively the "Maniagos") and Defendant Oak Hill at Snug Harbor LLC ("Oak Hill")[1], asserting as follows:

## The Parties

1. Plaintiff Heather Miller, as Trustee of the HM 2021 Irrevocable Trust, dated August 11, 2021, is an adult individual who resides in Vero Beach, Florida.

2. The Maniagos are husband and wife who reside together in Las Vegas, Nevada.

3. Oak Hill is a Maryland limited liability company, formed on November 5, 2021, for the exclusive purposes of holding title to certain waterfront property located at 27303 Bailey's Neck Road, Easton, Maryland (the "Maryland Property") and to execute the Guaranty of Payment and a related Indemnity Deed of Trust, Assignment and Security Agreement (the "Indemnity Deed of Trust") in favor of Plaintiff.

## Jurisdiction and Venue

4. This matter involves Plaintiff's enforcement of a December 8, 2021 Promissory Note (the "Note") against the Maniagos, a true and correct copy of which is included as **Exhibit A**, and enforcement of Guaranty of Payment, dated December 6, 2022 (the "Guaranty"), against Oak Hill, a true and correct copy of which is included as **Exhibit B**. Both the Note and Guaranty relate to funds that Plaintiff advanced for Defendants to acquire the Maryland Property.

5. This Court has specific personal jurisdiction over Oak Hill because it consented to jurisdiction in Maryland in its Guaranty, Oak Hill is a Maryland limited liability company and Oak Hill currently holds title to the Maryland Property, which is part of the subject matter giving rise to, and is related to, Plaintiff's claims and Oak Hill.

---

[1] The term "Defendants" is used to refer to the Maniagos and Oak Hill collectively.

6. This Court has specific personal jurisdiction over the Maniagos because: (a) the purpose of the Note at issue was to lend funds to the Maniagos to purchase a residential dwelling in Maryland for investment; (b) the Maniagos used the funds they borrowed from Plaintiff pursuant to the Note to purchase the Maryland Property, which they subsequently transferred to Oak Hill; (c) the Maniagos are the sole owners/members of Oak Hill; and (d) the Maniagos regularly visited Maryland to select and close on the Maryland Property using the funds at issue in the Note. All of these activities of the Maniagos in Maryland including, but not limited to, the Maniagos' purchase of the Maryland Property and their transfer of the Maryland Property to Oak Hill are part of the subject matter giving rise to, and is related to, Plaintiff's claims.

7. This Court has diversity jurisdiction over this matter because the Plaintiff resides in a different state than the Defendants and the amount in controversy exceeds $75,000.

8. Venue is proper in this Court because the events, transactions and occurrences forming the factual nexus and subject matter of Plaintiff's claims against each and all of the Defendants transpired in Maryland where the funds that Plaintiff loaned to the Maniagos, repayment of which was guaranteed by Oak Hill, were used to purchase the Maryland Property underlying Plaintiff's claims.

**Facts**

9. The Maniagos desired to purchase a waterfront property in Talbot County, Maryland as an investment to be used for short-term rentals.

10. The Maniagos, unable to obtain conventional financing due to their impaired financial condition and credit history, approached Plaintiff to finance their investment and, prior to execution of the Note, provided numerous assurances to make Plaintiff feel secure concerning repayment of the Note including, but not limited to, providing a business plan to Plaintiff to

reassure Plaintiff that there would be ample funds for repayment of the Note generated from the following: (a) income projections from short-term rentals of the Maryland Property; (b) a promise to deposit all short-term rental income generated from the Maryland Property into a segregated joint investment account (the "Joint Investment Account") with Plaintiff to have joint access and management control, but no distribution rights, over the Joint Investment Account prior to payment on the Note coming due and owing; (c) investment income projections of seven percent (7%) growth on deposits into the Joint Investment Account; and (d) estimated annual operating expenses for the Maryland Property (collectively the "Assurances of Repayment").  The Assurances of Repayment from the Joint Investment Account were memorialized in numerous written communications from the Maniagos to Plaintiff which included financial spreadsheets.

11. In early November 2021, while Plaintiff and the Maniagos were finalizing the terms of the Note, Plaintiff advanced the full amount of $1,900,000 to the Maniagos to purchase the Maryland Property for approximately $1,750,000 with the remainder of funds advanced to be used for closing costs and renovations to the Maryland Property to make it suitable for short-term rentals.

12. On November 12, 2021, the Maniagos acquired title to the Maryland Property in their own names.

13. On or about December 8, 2021, the Maniagos, as the Borrowers, executed the Note, which included terms intended to generally reflect the Maniagos' representations to Plaintiff that induced Plaintiff to loan the funds to the Maniagos to purchase the Maryland Property, including, but not limited to, establishment of the Joint Investment Account and the Assurances of Repayment.

14. On February 22, 2022, the Maniagos conveyed the Maryland Property to the Maniago Family Trust (the "Trust") and then on that same day the Maniagos, acting as Trustees of the Trust, conveyed the Maryland Property to Oak Hill.

15. Approximately one (1) year after Plaintiff lent the funds to the Maniagos to purchase the Maryland Property and one (1) year after the Maniagos executed the Note, on December 6, 2022, Oak Hill executed the Guaranty (Ex. B) as well as the related Indemnity Deed of Trust in favor of Plaintiff as additional security for repayment of the Note. A true and correct copy of the Indemnity Deed of Trust is included herewith as **Exhibit C**.

16. Plaintiff, serving as a fiduciary of the HM 2021 Irrevocable Trust, would not have loaned the money to the Maniagos pursuant to the Note but for the Maniagos' representations relating to the Joint Investment Account and their Assurances of Repayment, particularly because the Joint Investment Account would, among other things, enable Plaintiff to monitor the income generated from the Maryland Property into the Joint Investment Account and the investment performance of the Joint Investment Account. Additionally, the Joint Investment Account was material to both Plaintiff and the Maniagos because each was aware following the real estate recession of 2008 that merely obtaining a security interest in the Maryland Property through pledge of a deed of trust was not a guarantee of repayment in full because of the risk that real estate could decrease in value. Furthermore, the mutual understanding and intention of the parties was that when the Note came due, the Maryland Property would only be sold to repay the Note as a secondary option; rather, the primary means for repayment of the Note would be from the Joint Investment Account and Defendants would own the Maryland Property free and clear of any liens.

17. Although repayment of the principal amount of $1,900,000 and interest is due in the normal course on November 1, 2041, Paragraphs 1 and 4(ii) of the Note (Ex. A), among other

provisions, allow for acceleration of repayment of the entire amount owing under the Note five (5) business days from written notice from Plaintiff, absent cure, in the event "… there shall exist or occur any event or condition that Lender reasonably believes impairs, or is substantially likely to impair, the prospect of payment or performance by Borrowers of their obligations under this Note …." This language in the Note captures the Maniagos' promise of establishment of the Joint Investment Account and their Assurances of Repayment that induced Plaintiff to lend the funds to the Maniagos pursuant to the Note.

18. By October 2023, Plaintiff became concerned that conditions may exist that impair the prospect of repayment because, among other reasons: (a) after the initial impacts of COVID subsided, the Maniagos pivoted from short-term rentals of the Maryland Property to longer-term leasing which caused concern that income generated from the Maryland Property was substantially below the Maniagos' income projections; (b) the Maniagos failed to establish the Joint Investment Account or failed to provide Plaintiff with access to monitor the funds in the segregated Joint Investment Account; (c) the Maniagos failed to provide Plaintiff with access to the segregated Joint Investment Account to monitor the investment performance of the Joint Investment Account; and (d) the Maniagos failed to provide Plaintiff with access to the segregated Joint Investment Account to monitor that the Maniagos were not taking distributions from the Joint Investment Account of funds that were intended to remain in the Joint Investment Account for repayment of the Note to Plaintiff.

19. As a result of the foregoing, on October 30, 2023, Plaintiff provided written notice of a material breach of the Note and an opportunity to cure (the "Notice of Breach") to both the Maniagos and to Oak Hill based upon, among other reasons, the Maniagos' failures identified in

Paragraph 18, above. A true and correct copy of Notice of Breach is included herewith as **Exhibit D**.

20. On November 3, 2023, through their Maryland counsel, Defendants wrote to Plaintiff's counsel, thereby confirming receipt of the Notice of Breach, and disavowed any obligation to maintain the rental proceeds in a Joint Investment Account and refused to provide any evidence to Plaintiff of the existence of the Joint Investment Account or of the amount of funds accumulated and maintained in that Account. A true and correct copy of Defendants' November 3, 2023 "Response to Notice of Breach" is included as **Exhibit E**.

## COUNT I

### (Breach of Contract Against Maniagos)

21. The averments in paragraphs 1 through 20 are incorporated herein by reference.

22. The Maniagos are obligated to repay Plaintiff $1,900,000 and interest accruing at the rate of 2.7% per annum, compounded annually, and then at a higher rate of interest upon default pursuant to the Note.

23. The full amount of all principal and interest owed under the Note shall become immediately due and payable pursuant to, among other provisions, Paragraphs 1 and 4(ii) of the Note in the event that notice is provided of an event or condition that Plaintiff reasonably believes impairs the prospect of payment if cure is not made within five (5) business days of the notice.

24. On or about October 30, 2023, Plaintiff provided a Notice of Breach to the Maniagos through Exhibit D based upon her reasonable belief that a condition exists that will impair, or is substantially likely to impair, the prospect of payment on the Note.

25. Through their November 3, 2023 Response to Notice of Breach (Ex. E), the Maniagos have failed and refused to cure their breach of the Note.

26. The full principal amount of $1,900,000 became due and owing on the Note on or before November 4, 2023.

27. As of September 16, 2024, interest in the amount of $244,248.09 has accrued on the Note and is due and owing. Default interest at the legal rate continues to accrue as of the date of default.

28. Pursuant to Paragraph 5 of the Note, the prevailing party shall be entitled to recover its costs and expenses, including attorneys' fees.

29. Plaintiff has and will continue to incur attorneys' fees, costs and expenses as a result of the Maniagos' breach of the Note for which the Maniagos are liable to Plaintiff.

WHEREFORE, Plaintiff demands that a judgment be entered in favor of Plaintiff and against Defendants Steven and Vanessa Maniago for an amount in excess of $75,000, plus pre-judgment and post-judgment interest, attorneys' fees, costs and expenses and such other and further relief that justice requires.

## COUNT II

**(Breach of Guaranty Against Oak Hill)**

30. Paragraphs 1 through 29 are incorporated herein by reference.

31. Pursuant to the Guaranty, Oak Hill guaranteed performance under the Note in the event of default by the Maniagos.

32. The Maniagos are in default of the Note.

33. On or about October 30, 2023, Plaintiff provided a Notice of Breach to Oak Hill through Exhibit D.

34. Neither the Maniagos nor Oak Hill cured the defaults after Plaintiff issued the Notice of Breach.

35. Under the terms of the Guaranty, which incorporates the terms of the Note by reference, the Guaranty is in default and all sums due and owing under the Note are also due and owing by Oak Hill pursuant to its Guaranty.

36. As of September 16, 2024, interest in the amount of $244,248.09 has accrued on the Guaranty and is due and owing. Default interest at the legal rate continues to accrue as of the date of default.

37. Pursuant to Paragraph 5 of the Guaranty, Oak Hill agreed to pay court costs and attorneys' fees in the event of a default under the Note and/or Guaranty.

38. Plaintiff has and will continue to incur attorneys' fees, costs and expenses as a result of Oak Hill's breach of the Guaranty for which Oak Hill is liable to Plaintiff.

WHEREFORE, Plaintiff demands that a judgment be entered in favor of Plaintiff and against Defendant Oak Hill at Snug Harbor LLC for an amount in excess of $75,000, plus attorneys' fees, costs and expenses and such other and further relief that justice requires.

Respectfully submitted,

/s/ *Richard A. DeTar*
Richard A. DeTar, Bar No. 22437
McAllister, DeTar, Showalter & Walker LLC
100 N. West Street
Easton, Maryland 21601
Phone: (410) 820-0224
Facsimile: (443) 746-3298
Email: rdetar@mdswlaw.com